UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Douglas Giddens,
   Petitioner

   v.                                    Case No. 09-cv-277-SM
                                         Opinion No. 2011 DNH 084
Warden, N.H. State Prison,
   Respondent


**O R D E R**

In December of 2004, Douglas Giddens, was tried in state court on charges of kidnapping and aggravated felonious sexual assault ("AFSA"). The evidence introduced against him was compelling. DNA evidence linking him to the crime, incriminating statements he made to police, and testimony by his victim, who described how Giddens abducted her at knife-point and repeatedly raped her, were presented to the jury. Giddens was convicted of one count of kidnapping and seven counts of AFSA. He was sentenced to serve 30 to 60 years in state prison. His convictions were affirmed on appeal to the New Hampshire Supreme Court. State v. Giddens, 155 N.H. 175 (2007).

Giddens now seeks federal habeas corpus relief. See generally 28 U.S.C. § 2254. In support of his petition, Giddens points to numerous instances, during both his trial and direct appeal, that he says amounted to ineffective assistance of

counsel in violation of his Sixth Amendment rights.  None of those claims has merit.[1]

**Standard of Review**

I.   <u>AEDPA and Petitioner's Burden</u>.

Since passage of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the power to grant federal habeas relief to a state prisoner with respect to claims adjudicated on the merits in state court has been substantially limited.  A federal court may not disturb a state conviction unless the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  And, a habeas petitioner seeking relief under that provision faces a substantial burden insofar as "a determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).

---

[1]   Initially, Giddens also pressed three claims in which he asserted that he was denied due process at various stages of his trial.  He later withdrew those claims.  <u>See</u> Motion to Amend Habeas Petition (document no. 11) at 1.  <u>See also</u> Petitioner's Objection to Summary Judgment (document no. 21) at 1 ("As was made clear in the petitioner's Motion to Amend Habeas Petition, claims 1-3 were dropped.").

Alternatively, habeas relief may be granted if the state court's resolution of the constitutional issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court explained the distinction between decisions that are "contrary to" clearly established federal law, and those that involve an "unreasonable application" of that law as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). The Court also noted that an "incorrect" application of federal law is not necessarily an "unreasonable" one.

> The most important point is that an <u>unreasonable</u> application of federal law is different from an <u>incorrect</u> application of federal law . . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

>     incorrectly.  Rather, that application must also be
>     unreasonable.

Id. at 410-11 (emphasis in original).  So, to prevail, the habeas petitioner must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011).

Finally, it probably bears noting that a state court need not rely upon, nor need it even cite, Supreme Court precedent in order to avoid resolving a petitioner's claims in a way that is "contrary to" or involves an "unreasonable application of" clearly established federal law.  See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls does not require citation of our cases - indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.") (emphasis in original).  In fact, even when a state court has summarily rejected a petitioner's federal claim without any discussion at all, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  Harrington, 131 S. Ct. at 784-85.

4

Under those circumstances - that is, when "a state court's decision is unaccompanied by an explanation," - the habeas petitioner still bears the burden of "showing there was no reasonable basis for the state court to deny relief." Id. at 784.

Only as to federal claims that were not adjudicated on the merits by the state court (or that were not dismissed by operation of a regularly-applied state procedural rule), may this court apply the more petitioner-friendly de novo standard of review. See, e.g., Clements v. Clarke, 592 F.3d 45 52 (1st Cir. 2010) ("In contrast, a state court decision that does not address the federal claim on the merits falls beyond the ambit of AEDPA. When presented with such unadjudicated claims, the habeas court reviews them de novo.") (citation omitted).

II. Ineffective Assistance of Counsel.

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show that his or her counsel provided constitutionally deficient representation and that the petitioner suffered prejudice as a result. See Strickland v. Washington, 466 U.S. 668, 687 (1984). As to each of those essential elements, the petitioner bears a substantial burden of proof:

> To establish deficient performance, a person challenging a conviction must show that counsel's representation fell below an objective standard of reasonableness.  A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.
>
> With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  It is not enough to show that the errors had some conceivable effect on the outcome of the proceeding.  Counsel's errors must be so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Harrington, 131 S. Ct. at 787-88 (citations and internal punctuation omitted).  Given the foregoing requirements, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010).

## Discussion

Giddens says he received constitutionally deficient legal representation at both the trial and appellate levels.  In three separate post-trial proceedings, the state superior court addressed (and resolved) each of Giddens' numerous federal claims on the merits.  See Order on Motion for New Trial (January 30, 2009) (document no. 23); Order on Petition for Habeas Corpus

(March 8, 2010) (document no. 23-2); Order on Petition for Habeas Corpus (July 20, 2010) (23-1). The New Hampshire Supreme Court summarily denied each of Giddens' discretionary appeals. Because Giddens' federal claims were addressed on the merits, this court's review is highly deferential and, as noted above, Giddens bears the substantial burden of demonstrating that the state courts' resolution of his constitutional claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). He has failed to do so.[2]

First and most fundamentally, Giddens' arguments are misplaced. Rather than attempt to demonstrate how the state courts' various decisions were contrary to, or involved an unreasonable application of, Supreme Court precedent, he argues

---

[2] Parenthetically, the court notes that, at least arguably, the state superior court disposed of two of Giddens' ineffective assistance claims (failure to seek out witnesses and failure to impeach the victim on her identification of Giddens as her assailant) on procedural grounds. See Order of Petition for Habeas Corpus (document no. 23-1) at 3 (ruling that those claims were procedurally barred but, in the alternative, concluding that they failed on the merits). See generally Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (discussing state court holdings that invoke state procedural bars and, in the alternative, address the merits of a petitioner's claims). But, the State does not argue that those claims were procedurally barred, so the court will consider the superior court's discussion of the merits of those claims under the standards established in section 2254(d).

instead that those decisions were incorrect.  But, as noted above, there is a substantial (and legally significant) distinction between a decision that is merely "incorrect" and one that is "unreasonable."  While Giddens may disagree with the state courts' resolution of his various claims, he has not demonstrated that those decisions were the product of an <u>unreasonable</u> application of federal law.  Nor has he shown that the state courts' decisions were based upon an unreasonable determination of the facts.  Consequently, he has not demonstrated an entitlement to habeas relief.

Beyond that, however, even if Giddens had attempted to meet his burden under section 2254, he would have failed.  His strongest claim is this: that trial counsel provided constitutionally deficient representation by failing to seek a limiting instruction from the court after Manchester Police Officer John Patti testified for the State.  Giddens argues that because the crimes with which he was charged occurred in Milford, New Hampshire, the jury might reasonably have inferred from the involvement of Manchester police officers that Giddens was also a suspect in unsolved Manchester rapes.  And, says Giddens, trial counsel should have sought a limiting instruction from the court to address that possibility.

In his direct appeal, Giddens argued to the state supreme court that the trial court erred in refusing to exclude Officer Patti's testimony pursuant to New Hampshire Rules of Evidence 403 and 404(b).  The court rejected that claim, concluding that the Officer's testimony did not unfairly prejudice Giddens.  State v. Giddens, 155 N.H. at 181.  Subsequently, Giddens presented the same claim in support of his motion for a new trial, but he packaged it in a slightly different way.  Rather than faulting the trial court for admitting the officer's testimony, he leveled an accusatory finger at his trial counsel, saying the failure to seek a limiting instruction in the wake of Officer Patti's testimony amounted to ineffective assistance.  The state superior court carefully considered and rejected that claim.

> The defendant further argues that counsel should have requested a limiting instruction which would have erased any taint of prejudice from the jury's mind. While the defendant does give examples of possible limiting instructions which could have been made by counsel, each of those suggestions is fraught with the danger that the limiting instruction would reinforce any prejudicial effect of the evidence.  Clearly counsel could not be faulted for erring on the side of caution.  <u>This was clearly a tactical decision by counsel to avoid the danger of further prejudice</u>.
>
> Finally, however, the defendant disregards the Supreme Court's determination that, in any event, even without a limiting instruction or a motion in limine to exclude evidence that Detective Patti was a Manchester police officer, or a lack of cross-examination, there was little danger of unfair prejudice.  In order to require a new trial, the defendant must show that his attorney's failure to cross-examine effectively in

> regard to the evidence, or to request a limiting
> instruction, was so prejudicial that there is a
> reasonable probability that, but for this failure of
> counsel, the defendant would have been acquitted. It
> is clear that no such level of actual prejudice has
> been achieved. The Supreme Court found "little danger
> of unfair prejudice" by allowing the evidence, even
> considering the attorney's failure to cross-examine or
> to request a limiting instruction.

Order of Motion for New Trial (document no. 23). Giddens has not pointed to any Supreme Court precedent suggesting that the state court's decision was contrary to, or involved an unreasonable application of, federal law (here, <u>Strickland</u> and its progeny). Nor has he demonstrated that the court erred when it concluded that trial counsel made an entirely reasonable (and constitutionally permissible) tactical decision not to seek a limiting instruction.

Giddens' remaining claims require little discussion. At worst, they are fanciful (e.g., his claim that trial counsel should have retained an expert on body language after a police officer testified, in passing, that at one point during the interview, Giddens put his feet up on the desk and had his hands behind his head). At best, they are off the mark (e.g., his claim that trial counsel should have impeached the victim with her allegedly inconsistent descriptions of her attacker, despite the fact that Giddens acknowledged having sexual intercourse with

her and based his defense to the rape charge on the claim that it was consensual).[3]

## Conclusion

For the foregoing reasons, petitioner has failed to demonstrate that the state courts resolved his federal constitutional claims in a way that was contrary to, or involved an unreasonable application of, clearly established federal law. Nor has he shown that any of those decisions was based on an unreasonable determination of the facts in light of the record evidence. See 28 U.S.C. § 2254(d). Moreover, even if his claims were subject to the more petitioner-friendly de novo standard of review, he would not be entitled to habeas corpus relief. In short, he has not shown that he was deprived of any federally protected constitutional rights, either during the course of his trial or on direct appeal.

The respondent's motion for summary judgment (document no. 18) is granted. The petitioner's motion for summary judgment (document no. 22) is denied, as is his petition for a writ of

---

[3] Of course, the DNA evidence linking Giddens to the victim virtually precluded any plausible defense based upon mistaken identity - hence, Giddens' decision to assert that his sexual relations with the victim were consensual, and the lack of any need for counsel to question or undermine the victims' identification of Giddens as her assailant.

habeas corpus (documents no. 1 and 11).  The Clerk of Court shall enter judgment in accordance with this order and close the case.

Because Giddens has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability. Petitioner may, however, seek such a certificate from the court of appeals under Federal Rule of Appellate Procedure 22(b). <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (2010); 28 U.S.C. § 2253(c).

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 25, 2011

cc:  Douglas Giddens, <u>pro</u> <u>se</u>
     Elizabeth C. Woodcock, Esq.